UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                             :

LVP ASSOCIATES L.L.C. and                 :
349 ASSOCIATES L.L.C.,              :     **Civil Action No.:** 1:17-cv-05274-SHS
                                              :

Plaintiffs,                              :
                                              :

                   -against-               :
                                                :

BANK OF CHINA, NEW YORK BRANCH,      :
                                              :

Defendant.                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TROUTMAN SANDERS LLP
Matthew J. Aaronson
Patrick M. Ryan
875 Third Avenue
New York, New York 10022
(212) 704-6000

*Attorneys for Defendant Bank of
China, New York Branch*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

ARGUMENT ........................................................................................................................... 5

I.     INDEMNIFICATION FOR REASONABLE ATTORNEYS' FEES, COSTS,
AND DISBURSEMENTS IS RECOVERABLE UNDER SECTION 5.17 OF
THE LVP AND 349 LOAN AGREEMENTS ................................................................... 5

II.    SUMMARY JUDGMENT ON REASONABLE ATTORNEYS' FEES, COSTS,
AND EXPENSES IS APPROPRIATE BECAUSE THE REQUEST CONCERNS
A STRAIGHTFORWARD ISSUE OF CONTRACT INTERPRETATION ................... 6

III.   LEGAL STANDARDS GOVERNING AWARDS OF ATTORNEYS' FEES ............... 8

IV.   THE HOURLY RATES OF BOC'S COUNSEL ARE REASONABLE ......................... 9

V.    THE HOURS EXPENDED BY BOC'S COUNSEL ARE REASONABLE ................. 10

VI.   NO ELEMENT OF PLAINTIFFS' CLAIMS CONSTITUTE AN ALLEGATION
OF GROSS NEGLIGENCE, ILLEGAL ACTS, FRAUD, OR WILLFUL
MISCONDUCT .............................................................................................................. 11

     A.    This Court Has Already Resolved This Matter Without Any Final Judicial
Determination Of Gross Negligence, Illegal Acts, Fraud, Or Willful
Misconduct ........................................................................................................ 12

     B.    Even If Leave To Amend The Complaint Were Granted, Plaintiffs'
Proposed Amended Complaint Cannot Give Rise To A Final Judicial
Determination Of Gross Negligence, Illegal Acts, Fraud, Or Willful
Misconduct ........................................................................................................ 13

CONCLUSION ...................................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1864 7 Ave. Hous. Dev. Fund Corp. v. Weston United Cmty. Renewal, Inc.*,
Docket No. 0109903/2006, Index No. 108803/2006, 2008 N.Y. Misc. LEXIS
8256, 2008 NY Slip Op 30115(U), (Sup. Ct. NY Cty., Jan. 15, 2008) ...................................7

*438 W. 20 St., LLC. v. Bares*,
No. 654331/2015, 2016 N.Y. Misc. LEXIS 2813, 2016 NY Slip Op 31452(U),
(Sup. Ct. NY Cty., July 25, 2016).........................................................................................13

*Adorno v. Port Authority of N.Y. & N.J.*,
685 F. Supp. 2d 507 (S.D.N.Y. 2010).....................................................................................9

*Am. Home Assurance Co. v. Hapag Lloyd Container Line, GmbH*,
446 F.3d 313 (2d Cir. 2006).....................................................................................................7

*Amaprop Ltd. V. Indiabulls Fin. Servcs. Ltd.*,
C.A. No. 10 Civ. 1853(PGG), 2011 WL 1002439 (S.D.N.Y. March 16, 2011)
*aff'd*, 483 F. App'x 634 (2d Cir. 2012)..................................................................................10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................................6

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182 (2d Cir. 2007)................................................................................................9, 10

*Berner v. British Commonwealth Pacific Airlines, Ltd.*,
346 F.2d 532 (2d Cir. 1965)...................................................................................................17

*Bradley v. Earl B. Feiden, Inc.*,
8 N.Y.3d 265 (2007) .................................................................................................................5

*Calderon v. New Water St. Corp.*,
No. 103176/2005, 2007 N.Y. Misc. LEXIS 9387, 2007 NY Slip Op 34532(U),
(Sup. Ct. NY Cty., July 10, 2007)............................................................................................8

*Chinatrust Bank (U.S.A) v. Pinter*,
C.A. No. 04 Civ. 5331 (SLT) (KAM) 2008 WL 2987152 (E.D.N.Y. July 11,
2008) ........................................................................................................................................8

*Clarendon Nat. Ins. Co. v. Advance Underwriting Managers Agency, Inc.*,
C.A. No. 06 Civ. 15361, 2011 WL 6153691 (S.D.N.Y. Dec. 8, 2011) ...................................9

ii

*Clarke v. Frank,*
    960 F.2d 1146 (2d Cir. 1992)..................................................................................10

*Costello v. Flatman,*
    No. 11 Civ. 287, 2013 WL 1296739 (E.D.N.Y. Mar. 28, 2013) ...............................9

*Di Filippo v. Morizio,*
    759 F.2d 231 (2d Cir.1985)......................................................................................10

*Dwyer v. Goldman Sachs Headquarters LLC,*
    819 F. Supp. 2d 320 (S.D.N.Y. 2011)....................................................................5, 7

*E\*Trade Fin. Corp. v. Deutsche Bank AG,*
    374 Fed.Appx. 119 (2d Cir. 2010) ............................................................................8

*EEOC v. Bloomberg L.P.,*
    967 F. Supp.2d 816 (S.D.N.Y. 2013).........................................................................6

*Evans v. Famous Music Corp.,*
    1 N.Y.3d 452 (2004) .............................................................................................5, 6

*Farbotko v. Clinton County of N.Y.,*
    433 F.3d 204 (2d Cir. 2005)......................................................................................9

*F.H. Krear & Co. v. Nineteen Named Trustees,*
    810 F.2d 1250 (2d Cir. 1987)....................................................................................8

*Food Pageant v. Consol. Edison Co.,*
    54 N.Y.2d 167 (1981) .............................................................................................13

*Grant v. Martinez,*
    973 F.2d 96 (2d Cir.1992)........................................................................................10

*Grey v. Am. Airlines, Inc.,*
    227 F.2d 282 (2d Cir. 1955).....................................................................................17

*Harkin v. WDF, Inc.,*
    924 N.Y.S.2d 309 (Sup. Ct. NY Cty. 2011) ...........................................................17

*Hartford Accident & Indem. Co. v. Wesolowski,*
    33 N.Y.2d 169 (1973) ...............................................................................................7

*In Time Products, Ltd. v. Toy Biz, Inc.,*
    38 F.3d 660 (2d Cit. 1994)........................................................................................8

*Int'l Mining Corp. v. Aerovias Nacionales de Colombia S.A.,*
    57 A.D.2d 64 (N.Y. App. Div. 1st Dep't 1977)..................................................17, 18

iii

*Maestro W. Chelsea SPE LLC v. Pradera Realty Inc.*,
   38 Misc. 3d 522 (Sup. Ct. NY Cty. 2012) ............................................................5

*Mallad Constr. Corp. v. Cty. Fed. Sav. & Loan Ass'n*,
   32 N.Y.2d 285 (1973) ...........................................................................................7

*Mandarin Trading Ltd. v. Wildenstein*,
   16 N.Y.3d 173 (2011) ...........................................................................................16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)................................................................................................6

*Millea v. Metro-N. R.R. Co.*,
   658 F.3d 154 (2d Cir. 2011)...................................................................................8

*Morris v. Eversley*,
   343 F. Supp. 2d 234 (S.D.N.Y. 2004).....................................................................9

*NetJets Aviation, Inc. v. LHC Communication, LLC*,
   537 F.3d 168 (2d Cir. 2008)...................................................................................8

*New York State Ass'n for Retarded Children v. Carey*,
   711 F.2d 1136 (2d Cir.1983)..................................................................................10

*In re Nissan Radiator/Transmission Cooler Litig.*,
   No. 10 Civ. 7493, 2013 WL 4080946 (S.D.N.Y. May 30, 2013)...........................10

*Pasternack v. Lab. Corp. of Am. Holdings*,
   27 N.Y.3d 817 (2016) ...........................................................................................16

*Pegasus Aviation I, Inc. v. Varig Logistica S.A.*,
   26 N.Y.3d 543 (2015) ...........................................................................................13

*Pekelis v. Transcontinental & Western Air, Inc.*,
   187 F.2d 122 (2d Cir. 1951)...................................................................................17

*Quik Snax v. Herald Ctr. Dept. Store, L.P.*,
   221 A.D.2d 154, 633 N.Y.S.2d 37 (N.Y. App. Div. 1st Dept. 1995) ......................7

*Scholem v. Acadia Realty Ltd. P'ship*,
   45 Misc. 3d 562, 992 N.Y.S.2d 857 (Sup. Ct. Suffolk Cty. 2014) ........................18

*Simmons v. New York City Transit. Auth.*,
   575 F.3d 170 (2d. Cir. 2009)..................................................................................9

*U.S. Fidelity & Guaranty Co. v. Braspetro Oil Servs. Co.*,
   369 F.3d 34 (2d Cir. 2004).....................................................................................9

iv

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................................6

This Memorandum of Law is respectfully submitted on behalf of defendant Bank of China, New York Branch ("BOC") in support of BOC's Motion for Summary Judgment on its Counterclaim for Reasonable Attorneys' Fees, Costs and Expenses pursuant to Section 5.17 of the loan agreements entered into with plaintiffs LVP Associates L.L.C. ("LVP") and 349 Associates L.L.C. ("349") (349, together with LVP, the "Plaintiffs").

## PRELIMINARY STATEMENT

Pursuant to their agreements with BOC, Plaintiffs agreed to indemnify BOC for any and all liabilities, including all costs, expenses and disbursements of any kind, including reasonable attorney's fees and expenses, that BOC incurred in connection with the loans.  The only exception to this indemnity obligation is if it is finally judicially determined that such indemnified liabilities arose from BOC's gross negligence, illegal acts, fraud or willful misconduct.  As discussed below, in the Court's November 16, 2017 Opinion and Order on the parties' motions for Summary Judgment (the "SJ Order"), whereby the Court adjudicated all of Plaintiff's claims, the Court did not make any determination (let alone imply) that BOC had engaged in any gross negligence, illegal acts, fraud or willful misconduct.  Accordingly, the limited exception to Plaintiffs' indemnity obligation is inapplicable.

The claims sought to be asserted by Plaintiffs in their proposed amended complaint, which is the subject of Plaintiffs' pending motion for leave to amend [ECF No. 37], and which BOC has opposed on the grounds that the amendment is futile, would not help Plaintiffs avoid their indemnity obligations.  Even if the Court grants Plaintiffs' motion and permits some or all of the claims asserted in the proposed amended complaint to proceed, no claim for gross negligence, illegal acts, fraud or willful misconduct is asserted, and, as discussed below, the claims asserted would not give rise to a final judicial determination that the legal fees and expenses that BOC has incurred arose in connection with any gross negligence, illegal acts, fraud or willful misconduct

1

by BOC.  Accordingly, BOC is entitled to indemnification from Plaintiffs for its reasonable attorneys' fees and costs incurred in connection with its dispute with Plaintiffs in the amount of $178,321.17, as discussed below.

## STATEMENT OF FACTS

On or about May 22, 2007, BOC entered into the following three mortgage loans with three entities controlled by non-party Paul Profeta:  (1) a loan for $7,350,000 to LVP secured by premises (the "LVP Property") located at 2130 Milburn Avenue, Maplewood, NJ (the "LVP Loan"), as later amended by a certain amendment to the loan agreement dated September 17, 2010 (said loan agreement, as so amended, the "LVP Loan Agreement"); (2) a loan for $10,500,000 to 349 secured by premises (the "349 Property") located at 349 East Northfield Road, Livingston, NJ (the "349 Loan"), as later amended by a certain amendment to the loan agreement dated September 17, 2010 (said loan agreement, as so amended, the "349 Loan Agreement"); and (3) a loan for $14,350,000 to 769 Associates L.L.C. ("769") secured by premises (the "769 Property") located at 769 Northfield Avenue, West Orange, NJ (the "769 Loan", and together with the LVP Loan, and the 349 Loan, the "Profeta Loans"), as later amended by a certain amendment to the loan agreement dated September 17, 2010 (said loan agreement, as so amended, the "769 Loan Agreement", and together with the LVP Loan Agreement, and the 349 Loan Agreement, the "Profeta Loan Agreements").[1]

On or about June 8, 2017, BOC issued a Notice of Event of Default to LVP (the "LVP Notice") and to 349 (the "349 Notice"), and a Notice of Event of Default to 769 (the "769 Notice", and together with the LVP Notice and the 349 Notice, the "June 2017 Notices") arising out of each

---

[1] The Profeta Loan Agreements, and all other exhibits referenced herein, are attached to the Proposed Amended Complaint submitted November 20, 2017 ("Prop. Amended Compl.").  The Profeta Loan Agreements are attached to the Proposed Amended Complaint as Exhibits A, B, and C, respectively.

2

entity's respective loan agreement.  Copies of the June 2017 Notices are attached to Plaintiffs'

Proposed Amended Complaint as Exhibit T.  The 769 Notice notified 769 that the following Events

of Default had occurred:  There had been a material adverse change in the financial condition or

results of operations of 769 and in the value of the property securing the 769 Loan in violation of

Section 8.1(t) of the 769 Loan Agreement; and (2) BOC, in the exercise of its sole and reasonable

discretion, had deemed itself insecure pursuant to Section 8.1(u) of the 769 Loan Agreement.  Prop.

Amended Compl, Ex. T.

In addition, the 769 Notice informed 769 that based upon information provided by 769 on

April 20, 2017 covering the 12 months ending December 31, 2016, the debt service coverage ratio

("DSCR") of the 769 Property as of December 31, 2016 was less than 1.25-to-1.00, in violation of

Section 8.1(o) of the 769 Loan Agreement, constituting a Default under the 769 Loan Agreement.

*Id*.  The 349 Notice and the LVP Notice both stated that the Events of Default arising under the

769 Loan Agreement constituted an Event of Default under Section 8.1(k)—the cross-default

provision added as a condition of the 2010 settlement—of the LVP Loan Agreement and 349 Loan

Agreement, respectively.  Prop. Amended Compl., Ex. T.  As a result of the foregoing, the LVP

Notice and the 349 Notice each declared that all of the debt and all other amounts owed to BOC

by LVP and 349, respectively, were then immediately due and payable.  The amounts of these

loans remain outstanding.

The litigation arising out of these Events of Default has been consistently active since the

filing of the Original Complaint.  Following Plaintiffs' Motion for Summary Judgment [ECF No.

12], BOC opposed and cross-moved for summary judgment on Plaintiffs' claims [ECF No. 19].

On November 16th, this Court issued the SJ Order, granting in part and denying in part both

Plaintiffs' and BOC's motions [ECF No. 33].[2]  Just days later, on November 20th, following the SJ Order, Plaintiffs moved to amend the Original Complaint to add claims for breach of contract, breach of the duty of good faith and fair dealing, and tortious interference with contract and prospective economic advantage, each of which sought money damages [ECF No. 37].  On December 4th, BOC opposed Plaintiffs' motion for leave to amend as futile, as none of the claims for damages stated therein were capable of surviving a motion to dismiss [ECF No. 40].  The motion for leave to amend is currently pending.  In addition to these motions, counsel for BOC was heavily engaged prior to the commencement of this litigation in order to provide necessary legal counsel in anticipation of a possible action, and has been required to monitor closely the ongoing foreclosure litigation in the Chancery Division of the Superior Court of New Jersey, Essex County, concerning the properties securing the Profeta Loans (the "New Jersey Foreclosure Litigation") and coordinate with counsel in that action.

Pursuant to Section 5.17 of the LVP and 349 Loan Agreements, BOC's reasonable attorneys' fees, costs, and expenses arising out of pre-complaint negotiation and communication, the direct requirements of this litigation, and coordination of the foreclosures currently pending in the Superior Court of New Jersey[3] are fully recoverable in the amount of $178,321.17, as demonstrated in the annexed Declaration of Matthew J. Aaronson (the "Aaronson Declaration") and the exhibits thereto.  In connection with this matter, BOC's counsel has incurred and billed legal fees and expenses through the period ending December 31, 2017 in the total amount of

---

[2] The Court found that Plaintiffs were permitted to repay their loans in full and have their payment proceeds applied to their own loans; however, the Court also held that because of the cross-default provisions contained in the Profeta Mortgages as amended in the wake of the 2010 settlement, Plaintiffs were not entitled to a discharge of the liens against the subject properties while any one of the three properties remained in default of its loan agreement.  Thus, Plaintiffs could not have attained a discharge of the mortgage against their respective properties as long as 769 remained in default of its loan agreement.

[3] As explained in the Aaronson Declaration, BOC is not seeking the fees incurred by counsel in the New Jersey Foreclosure Litigation, which will presumably be sought in that court by the relevant counsel, but only the fees incurred by counsel for BOC here in coordinating the instant dispute with counsel in New Jersey.

$145,187.41, broken down as $135,766.00 in fees and $9,421.41 in reimbursable disbursements. Troutman has also accumulated $33,134.17 in fees and expenses yet to be billed.  Aaronson Dec., ¶ 29.  These amounts are presented in more detail in as detailed in the charts contained in paragraph 29 of the Aaronson Declaration, and in Exhibits G, H, and I thereto.

## ARGUMENT

### I.     Indemnification For Reasonable Attorneys' Fees, Costs, and Disbursements Is Recoverable Under Section 5.17 Of The LVP and 349 Loan Agreements

The terms of the Profeta Loan Agreements, as related to indemnification, are unmistakably straightforward in their meaning.  Because of this, the Court need only look to the language itself to fulfill its charge of giving effect to the parties' agreements on this point.  See *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458 (2004) ("[O]ur role in interpreting a contract is to ascertain the intention of the parties at the time they entered into the contract.  If that intent is discernible from the plain meaning of the language of the contract, there is no need to look further."); see also *Maestro W. Chelsea SPE LLC v. Pradera Realty Inc.*, 38 Misc. 3d 522, 529–30 (Sup. Ct. NY Cty. 2012).  A contract that provides for indemnification "will be enforced as long as the intent to assume such a role is sufficiently clear and unambiguous."  *Dwyer*, 819 F. Supp. 2d at 331 (citing *Bradley v. Earl B. Feiden, Inc.*, 8 N.Y.3d 265, 274 (2007)).

The indemnification provision that is the subject of this motion is found in Section 5.17 of the Profeta Loan Agreements.  It reads, in relevant part:

> Borrower shall defend, indemnify and hold harmless Lender and each of its Affiliates and their respective successors and assigns, including the directors, officers, partners, members, shareholders, participants, employees, professionals and agents of any of the foregoing (including any Servicer) and each other Person, if any, who Controls Lender, its Affiliates or any of the foregoing (each, an "***Indemnified Party***"), from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, expenses and disbursements of any kind or nature whatsoever (including the reasonable fees and disbursements of counsel for an Indemnified Party in connection with any investigative, administrative or judicial proceeding commenced or threatened,

whether or not Lender shall be designated a party thereto, court costs and costs of appeal at all appellate levels, investigation and laboratory fees, consultant fees and litigation expenses), that may be imposed on, incurred by, or asserted against any Indemnified Party (collectively, the "***Indemnified Liabilities***") in any manner, relating to or arising out of or by reason of the Loan . . . provided, however, that Borrower shall not have any obligation to any Indemnified Party hereunder to the extent that it is finally judicially determined that such Indemnified Liabilities (1) arise from the gross negligence, illegal acts, fraud or willful misconduct of such Indemnified Party or (2) first arise solely from conditions which first exist after Lender or a purchaser at foreclosure acquires the Property.

(Emphasis in original).  As the language of this provision clearly states, Plaintiffs and BOC, the parties to the LVP and 349 Loan Agreements, intended for Plaintiffs, as Borrowers, to indemnify BOC for "from and against any and all . . . costs, expenses and disbursements of any kind . . . including the reasonable fees and disbursements of counsel for an Indemnified Party in connection with any . . . judicial proceeding commenced or threatened . . . relating to or arising out of or by reason of the Loan."  Profeta Loan Agreements, § 5.17.  As stated in *Famous Music Corp.*, language like this leaves no room for argument as to the parties' intent: "If that intent is discernible from the plain meaning of the language of the contract, there is no need to look further."  1 N.Y.3d at 458.

## II. Summary Judgment On Reasonable Attorneys' Fees, Costs, and Expenses Is Appropriate Because The Request Concerns A Straightforward Issue Of Contract Interpretation

Summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  See generally *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  *EEOC v. Bloomberg L.P.*, 967 F. Supp.2d 816, 830 (S.D.N.Y. 2013) ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words,

there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party") (citations omitted).

Summary judgment is warranted where, as here, there is a contract at issue and it is not ambiguous.  A contract is ambiguous when it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Am. Home Assurance Co. v. Hapag Lloyd Container Line, GmbH*, 446 F.3d 313, 316 (2d Cir. 2006) (citations omitted).  It is well settled that that the construction of an unambiguous contract is a question of law for the Court to decide.  See *Hartford Accident & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169 (1973); *Mallad Constr. Corp. v. Cty. Fed. Sav. & Loan Ass'n*, 32 N.Y.2d 285, 291, (1973); *Quik Snax v. Herald Ctr. Dept. Store, L.P.*, 221 A.D.2d 154, 633 N.Y.S.2d 37 (N.Y. App. Div. 1st Dept. 1995).

Here, as further set forth below, the operative documents are not subject to multiple interpretations and are clear and unambiguous with respect to BOC's rights and obligations.  A straightforward reading of the plain language of the LVP Loan Agreement and the 349 Loan Agreement reveals that BOC is entitled to recover reasonable attorneys' fees, costs, and expenses resulting from pre-complaint negotiation and communication, the direct requirements of this litigation, and coordination of the foreclosures currently pending in the Superior Court of New Jersey.  As such, summary judgment should be granted in favor of BOC, awarding reasonable fees and disbursements.  See e.g., *Dwyer v. Goldman Sachs Headquarters LLC*, 819 F. Supp. 2d 320, 331 (S.D.N.Y. 2011) (Hon. J. Stein) (granting motion for summary judgment awarding defendant contractual indemnification); *1864 7 Ave. Hous. Dev. Fund Corp. v. Weston United Cmty. Renewal, Inc.*, Docket No. 0109903/2006, Index No. 108803/2006, 2008 N.Y. Misc. LEXIS 8256,

2008 NY Slip Op 30115(U), at 2–3 (Sup. Ct. NY Cty., Jan. 15, 2008) (awarding summary judgment to Weston on its cross-claims for contractual and common law indemnification, attorneys' fees and defense costs); *Calderon v. New Water St. Corp.*, No. 103176/2005, 2007 N.Y. Misc. LEXIS 9387, 2007 NY Slip Op 34532(U), at 4–5 (Sup. Ct. NY Cty., July 10, 2007) (granting a cross-motion for contractual indemnification of defense costs and attorneys' fees).

## III.  Legal Standards Governing Awards of Attorneys' Fees

Under New York law, "a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable." *NetJets Aviation, Inc. v. LHC Communication, LLC*, 537 F.3d 168, 175 (2d Cir. 2008).  "A district court's award of attorneys' fees pursuant to a contractual fee-shifting provision must be reasonably related to the fee arrangement that the prevailing party would have made with counsel absent a fee-shifting agreement." *In Time Products, Ltd. v. Toy Biz, Inc.*, 38 F.3d 660, 667–68 (2d Cit. 1994).  "[C]ourts generally enforce contractual fee-shifting provisions by ordering the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable. *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987). *See also Chinatrust Bank (U.S.A) v. Pinter,* C.A. No. 04 Civ. 5331 (SLT) (KAM) 2008 WL 2987152, at *2 (E.D.N.Y. July 11, 2008) (same).

"Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citation omitted).  District courts have broad discretion to determine a fee award based on the circumstances of the case. *See E\*Trade Fin. Corp. v. Deutsche Bank AG*, 374 Fed.Appx. 119, 124 (2d Cir. 2010) ("a district court has broad discretion in awarding attorneys' fees").  "As such, the

8

Court need not pore over every hour and minute billed but only make adjustments for any unnecessary, unreasonable, or excessive fees." *Clarendon Nat. Ins. Co. v. Advance Underwriting Managers Agency, Inc.*, C.A. No. 06 Civ. 15361, 2011 WL 6153691, at *2 (S.D.N.Y. Dec. 8, 2011) (quoting *U.S. Fidelity & Guaranty Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004)).

## IV.   The Hourly Rates of BOC's Counsel Are Reasonable

The Second Circuit has held that "[t]he reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007).  *See also Costello v. Flatman*, No. 11 Civ. 287, 2013 WL 1296739, at *4 (E.D.N.Y. Mar. 28, 2013) ("A reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.").

When determining hourly rates, courts "should generally use the hourly rates employed in the district in which the reviewing court sits," which is also known as the "forum rule." *Simmons v. New York City Transit. Auth.*, 575 F.3d 170, 174-75 (2d. Cir. 2009) (holding that a "district court must first apply a presumption in favor of application of the forum rule").  "A court may determine the reasonable hourly rate by relying both on 'its own knowledge of comparable rates charged by lawyers in the district,' as well as on 'evidence proffered by the parties.'" *Adorno v. Port Authority of N.Y. & N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) (*citing Morris v. Eversley*, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004); *Farbotko v. Clinton County of N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005)).

Here, Troutman's hourly billing rates—$720 per hour for partner Matthew J. Aaronson, $850 per hour for partner Simon D. Cices, $385 per hour for associate Patrick M. Ryan, and $155–$295 for paralegals of varying levels of experience—are in line with the prevailing rates in this

district for similar services by lawyers and staff of reasonably comparable skill, experience, and reputation. *See, e.g.*, *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10 Civ. 7493, 2013 WL 4080946, at *17 (S.D.N.Y. May 30, 2013) (finding reasonable $525 to $795 per hour for partners' time, $595 per hour for senior associate's time, and $325 to $675 per hour for associates' time). Moreover, the billing rates charged to BOC represent at <u>highest</u> Troutman's customary billing rates for each attorney and staff member who worked on this case, though on many bills in this matter this rate was discounted. (Aaronson Dec., ¶¶ 26–29). These rates are particularly appropriate here given the level of skill and experience that Mr. Cices, Mr. Aaronson, and Mr. Ryan brought to bear, as well as the efficiency with which they prosecuted this action—achieving a favorable ruling in the form of the November 16, 2017 SJ Order.

## V.     The Hours Expended By BOC's Counsel Are Reasonable

"After determining appropriate hourly rates, courts must calculate the reasonable number of hours billed in order to determine the presumptively reasonable fee." *Amaprop Ltd. v. Indiabulls Fin. Servcs. Ltd.*, C.A. No. 10 Civ. 1853(PGG), 2011 WL 1002439, *7 (S.D.N.Y. March 16, 2011) *aff'd*, 483 F. App'x 634 (2d Cir. 2012), *citing Arbor Hill,* 522 F.3d at 189–90. As with the determination of a reasonable rate, the court must look at both the "contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done," *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983), and also "to 'its own familiarity with the case . . . and its experience generally.'" *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir. 1992) (*quoting Di Filippo v. Morizio*, 759 F.2d 231, 236 (2d Cir.1985)). "The hours analysis turns not on what appears necessary in hindsight, but on whether 'at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Amaprop*, 2011 WL 1002439 at *7, quoting *Grant v. Martinez,* 973 F.2d 96, 99 (2d Cir.1992).

Here, BOC has submitted a billing report for this matter which sets forth every contemporaneous time entry made by every attorney and paralegal that provided services in connection with this matter between April 25, 2017 and December 31, 2017.  Through December 31, 2017, Mr. Cices has worked and billed 54.0 hours on this matter, Mr. Aaronson has worked and billed 94.7 hours on this matter, and Mr. Ryan has worked and billed 61.2 hours on this matter. In the same time period, additional Troutman attorneys have worked and billed 6.6 hours on this matter, and Troutman paralegals and librarians have worked and billed 10.2 hours on this matter.

The hours billed by BOC's counsel and paralegals were reasonable and necessarily expended in the prosecution of this action.  Indeed, given the amount of work undertaken from the time preceding the commencement of the litigation, as well as the favorable results achieved by those efforts, BOC submits that the time expended by Troutman was relatively modest.

## VI.   No Element Of Plaintiffs' Claims Constitute An Allegation Of Gross Negligence, Illegal Acts, Fraud, Or Willful Misconduct

Though Plaintiffs' obligation to indemnify BOC for its reasonable attorneys' fees and disbursements here is clear, Section 5.17 contains a carveout designed to protect Borrowers from particular types of liabilities incurred by Lender.  Pursuant to this carveout, Plaintiffs' obligation to indemnify BOC is excused "to the extent that it is finally judicially determined that such Indemnified Liabilities (1) arise from the gross negligence, illegal acts, fraud or willful misconduct of such Indemnified Party or (2) first arise solely from conditions which first exist after Lender or a purchaser at foreclosure acquires the Property."  Profeta Loan Agreements, § 5.17.  The second carveout therein, concerning conditions which first exist after Lender or a purchaser at foreclosure acquires the Property, is obviously inapplicable to the situation at bar.  As to the first carveout, no cause of action has been stated in either the Original Complaint or the Proposed Amended Complaint for gross negligence, illegal acts, fraud, or willful misconduct, and therefore, no such

11

final judicial determination could be made in this action, rendering this carveout inapplicable as well.[4]

**A.**     **This Court Has Already Resolved This Matter Without Any Final Judicial Determination Of Gross Negligence, Illegal Acts, Fraud, Or Willful Misconduct**

By the SJ Order issued on November 16, 2017 [ECF No. 33], this Court issued its decision granting in part and denying in part both Plaintiffs' Motion for Summary Judgment and BOC's Cross-Motion for Summary Judgment.  The SJ Order denied that portion of the declaratory relief sought by Plaintiffs which would have enabled them to avoid the cross-collateralization provisions of the mortgages they granted to the Bank and obtain a release of the security interest the Bank holds in their real property without repaying the amounts owed by their affiliate 769.  The Court found that Plaintiffs were entitled to "have all repayment proceeds be applied strictly to their respective loans and no other loans" [ECF No. 33], but also held that because of the cross-default provisions contained in the Profeta Mortgages as amended in the wake of the 2010 settlement, Plaintiffs were not entitled to a discharge of the security interests held by the Bank in Plaintiffs' properties while any one of the Profeta Loans remained in default.

Notably, there is nothing in the SJ Order determining (or even implying) that BOC engaged in gross negligence, illegal acts, fraud or willful misconduct, and since Plaintiffs failed to take an appeal from the SJ Order on or before December 18, 2017, the SJ Order constitutes a final determination of Plaintiffs' claims.  In light of the above, BOC is entitled to indemnification for its reasonable attorneys' fees and disbursements incurred in connection with its dispute with Plaintiffs.

---

[4] To date, no finding has been made by this Court, or in the New Jersey Foreclosure Litigation, that gross negligence, illegal acts, fraud, or willful misconduct has occurred or is even an element of those claims contained in the Original Complaint or Proposed Amended Complaint.

**B.    Even If Leave To Amend The Complaint Were Granted, Plaintiffs' Proposed Amended Complaint Cannot Give Rise To A Final Judicial Determination Of Gross Negligence, Illegal Acts, Fraud, Or Willful Misconduct**

That Plaintiffs now await a decision on their motion for leave to amend does not change the analysis.  Even if this Court were to grant Plaintiffs' Motion for Leave to Amend the Original Complaint, which BOC has opposed, the claims for damages alleged therein cannot give rise to a finding that any indemnified liabilities arose out of gross negligence, illegal acts, fraud, or willful misconduct.

**i.    Gross Negligence**

As defined by the courts of the State of New York, "gross negligence" entails "the failure to exercise even slight care".  *Pegasus Aviation I, Inc. v. Varig Logistica S.A.*, 26 N.Y.3d 543, 559 (2015) (quoting *Food Pageant v. Consol. Edison Co.*, 54 N.Y.2d 167, 172 (1981)).  A cause of action for gross negligence relies upon the same elements as a cause of action for traditional negligence (a duty of reasonable care, a breach of that duty, and resulting injury proximately caused by the breach), with the addition of the element of reckless disregard.  *438 W. 20 St., LLC. v. Bares*, No. 654331/2015, 2016 N.Y. Misc. LEXIS 2813, 2016 NY Slip Op 31452(U), at 13–15 (Sup. Ct. NY Cty., July 25, 2016).

The claims set forth by Plaintiffs in the Proposed Amended Complaint are for breach of contract, breach of the fiduciary duty of good faith and fair dealing, and tortious interference with contract and prospective economic advantage.  None of these claims alleges reckless disregard by BOC, much less gross negligence as a specific cause of action.  Furthermore, neither gross negligence nor reckless disregard are elements of the any of the claims in the Proposed Amended Complaint.  There is no credible argument—and therefore no possibility of a final judicial

13

determination on the point—that BOC's decision to interpret the Profeta Loan Agreements in the way that it did constituted reckless disregard, or even an unreasonable decision.

As set forth at page 13 of BOC's opposition [ECF No. 40] to Plaintiffs' motion for leave to amend the Original Complaint, the sworn affidavit of Jeffrey D. Goldman, at paragraph 26, as previously filed in this action [ECF No. 20] and the transcript of the November 27, 2017 oral argument on the Bank's motion for a rent receiver in the related New Jersey Foreclosure Litigation, at 43:12-44:2; 45:25-46:10, attached as Exhibit 2 to the Declaration of Matthew J. Aaronson previously submitted in this action [ECF No. 41] and attached as Exhibit E to the Declaration of Matthew J. Aaronson submitted with this motion, the 769 Property was worth far less than the outstanding principal loan balance of $14,350,000.  Simply put, the decision by BOC to declare an event of default was not reckless disregard giving rise to gross negligence.  Furthermore, the claims for damages in the Proposed Amended Complaint must fail; Section 9.12 of the Profeta Loan Agreements states that where BOC as Lender has an obligation to act reasonably, Borrower may not pursue claims against it for monetary damages, and Section 8.1(u) of the Profeta Loan Agreements states that it is within BOC's sole reasonable discretion to declare that it has been left financially insecure.  Thus, the language of Section 8.1(u) introduces a requirement that BOC act reasonably, implicating the prohibition on damages claims in Section 9.12.  Since none of the claims for damages can succeed, no final judicial determination of "gross negligence" can result from the Proposed Amended Complaint.

### ii.    Illegal Acts

The second category of behavior by BOC which the Profeta Loan Agreements precludes from indemnification is "illegal acts."  This term, as used therein, is undefined by either the Profeta Loan Agreements or the courts of the State of New York.  "Illegal acts" does not describe a specific

tort or civil cause of action, as gross negligence and fraud do.  Instead, the logical inference is that it refers to actions or omissions which are literally illegal—that is, proscribed as criminal.  From this perspective, nothing pleaded by Plaintiffs in the Proposed Amended Complaint alleges any illegal acts by BOC.  To the extent BOC interpreted the contract in a manner with which Plaintiffs disagreed, or declared events of default which Plaintiffs later disputed, these actions do not form the basis for any discernible violation of the law, and "illegal acts" are not an element of the any of the claims contained within the Proposed Amended Complaint.  Plaintiffs have, at most, alleged that Defendant breached the Profeta Loan Agreements, but breach of a contract is not illegal.

Furthermore, as argued above and in BOC's opposition [ECF No. 40] to Plaintiffs' motion for leave to amend the Original Complaint, BOC's determination that an event of default had occurred as to the 769 Property, thus triggering the cross-default provisions as to the other properties, was entirely reasonable given the value of that property relative to the balance of the 769 Loan.  As stated above, the waiver provision in Section 9.12 of the Profeta Loan Agreements precludes any claim for damages, and thus Plaintiffs' claims in the Proposed Amended Complaint must fail, foreclosing the possibility of a final judicial determination that "illegal acts" were committed.

### iii.     Fraud

Additionally, Section 5.17 of the Profeta Loan Agreements removes the obligation to indemnify where the indemnified liabilities arise from "fraud."  As stated above, the claims set forth in the Proposed Amended Complaint include only breach of contract, breach of the fiduciary duty of good faith and fair dealing, and tortious interference with contract and prospective economic advantage—none of which require a finding of fraud as an element, nor ask this Court

to determine as a matter of law that BOC committed the tort of fraud.  Notably, Plaintiffs did not assert a fraud claim in the Proposed Amended Complaint.

The elements of a fraud cause of action consist of "a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."  *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 827 (2016) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178 (2011)).  Here, none of these elements is present.  Neither the alleged misinterpretation of Section 2.3.1 of the Profeta Loan Agreements, nor the allegedly inappropriate declaration of an Event of Default for insecurity pursuant to Section 8.1(u) of the 769 Loan Agreement, constitute a misrepresentation or a material omission of fact known to be false by BOC,[5] made for the purpose of inducing Plaintiffs to rely upon it.  Furthermore, there is no part of Plaintiffs' claims which demonstrate reliance on any communications by BOC, and, as set forth in BOC's opposition [ECF No. 40] to Plaintiffs' motion for leave to amend the Original Complaint and discussed above, there have yet to be any damages pleaded.

For all the reasons detailed above, a final judicial determination of fraud will not be forthcoming from the Proposed Amended Complaint if the Court allows those claims to proceed.  Therefore, this carveout is not applicable to BOC's right to be indemnified for attorneys' fees, costs, and expenses.

### iv.    Willful Misconduct

---

[5] As discussed above, the fact that the 769 Property was underwater, leaving BOC insecure has been noted by the Court in the New Jersey Foreclosure Litigation, at 43:12-44:2; 45:25-46:10 of Ex. 2 to the Declaration of Matthew J. Aaronson previously submitted in this action [ECF No. 41] and attached as Exhibit E to the Declaration of Matthew J. Aaronson submitted with this motion.

33522589v2

The only remaining basis for Plaintiffs to avoid indemnifying BOC for its attorneys' fees and expenses is if it is judicially determined that such attorney's fees and expenses arose from BOC's "willful misconduct."   Willful misconduct is not defined in the LVP and 349 Loan Agreements.   Because no such definition is included in the language of the LVP and 349 Loan Agreements, an examination of the term as it has been defined in the courts of the State of New York is required.

While New York courts as an initial matter determine the meaning of the term "willful misconduct" from the language of the agreements containing it, the courts have also been required to parse the definition for themselves where, as here, no definition has been agreed upon by the parties.  See, e.g., *Int'l Mining Corp. v. Aerovias Nacionales de Colombia S.A.*, 57 A.D.2d 64, 68 (N.Y. App. Div. 1st Dep't 1977); *Harkin v. WDF, Inc.*, 924 N.Y.S.2d 309 (Sup. Ct. NY Cty. 2011). In *International Mining Corp.*, the court held that the Second Circuit had previously approved a definition of the term which characterized it as "a conscious intent to do or omit doing an act from which harm results to another, or an intentional omission of a manifest duty.  There must be a realization of the probability of injury from the conduct, and a disregard of the probable consequences of such conduct."   57 A.D.2d at 68 (quoting *Grey v. Am. Airlines, Inc.*, 227 F.2d 282, 285 (2d Cir. 1955)).  In *Berner v. British Commonwealth Pacific Airlines, Ltd.*, 346 F.2d 532, 536–37 (2d Cir. 1965), the court favorably quoted its earlier decision in *Pekelis v. Transcontinental & Western Air, Inc.*, 187 F.2d 122, 124 (2d Cir. 1951), stating:

> [W]ilful misconduct is the intentional performance of an act with knowledge that the performance of that act will probably result in injury or damage, or it may be the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences . . . [or] the intentional omission of some act, with knowledge that such omission will probably result in damage or injury, or the intentional omission of some act in a manner from which could be implied reckless disregard of the probable consequences of the omission.

*Berner*, 346 F.2d at 536–37.  The requirement that willful misconduct involve an element of awareness of the harmful effect of the acts or omissions, where not otherwise specified in the agreement at issue, has been maintained by the courts of the State of New York.  *See*, *e.g.*, *Scholem v. Acadia Realty Ltd. P'ship*, 45 Misc. 3d 562, 567, 992 N.Y.S.2d 857 (Sup. Ct. Suffolk Cty. 2014).

Under the definition enunciated by the Second Circuit and adopted by the First Department of the Appellate Division, no acts or omissions alleged by Plaintiffs in the Proposed Amended Complaint could give rise to a finding of willful misconduct.  Per the court's analysis in *International Mining Corp.*, there must be "a realization of the probability of injury from the conduct, and a disregard of the probable consequences of such conduct."  57 A.D.2d at 68.  As BOC has argued at length on pages 14, 16 and 20–21 of its opposition to Plaintiffs' motion for leave to amend their Original Complaint [ECF No. 40], Plaintiffs <u>cannot</u> make out a claim for damages resulting from any action by BOC.  Plaintiffs' allegations amount to nothing more than that BOC's exercise of its right to declare Events of Default prevented Plaintiffs from selling their properties to unidentified prospective purchasers, who were never under contract to purchase such properties.  Aaronson Dec., Ex. C, ¶¶ 1, 22, 36, 56, 58.  The fact that Plaintiffs do not allege that they had entered into contracts for sale of their properties and that BOC was aware of such contracts, necessarily defeats any possibility that BOC could have engaged in willful misconduct, as the required element of awareness of the harmful effect of BOC's purported acts is missing.

Furthermore, as is also the case with regard to gross negligence, illegal acts, and fraud, the right of BOC in its sole reasonable discretion to declare an Event of Default under Section 8.1(u) of the Profeta Loan Agreements precludes the possibility of a final judicial determination that willful misconduct has at any point occurred.  As detailed repeatedly above, the 769 Loan was indisputably underwater at the time BOC declared an Event of Default under Section 8.1(u) of the

769 Loan Agreement.   Therefore, BOC's determination was reasonable, and within its sole discretion.  Thus, no misconduct, willful or otherwise, could be found.

## **<u>CONCLUSION</u>**

For the reasons set forth above, BOC respectfully requests that the Court grant BOC's motion for summary judgment awarding BOC contractual indemnification of reasonable attorneys' fees, costs, and expenses in the amount of $178,321.17, and all further relief which the Court deems just, proper, and equitable.

Dated: New York, New York
        January 19, 2018

                                        TROUTMAN SANDERS LLP


                                        By: /s/ Matthew J. Aaronson
                                        Matthew J. Aaronson
                                        Patrick M. Ryan
                                        875 Third Ave
                                        New York, New York 10022
                                        Tel: (212) 704-6000
                                        matthew.aaronson@troutmansanders.com
                                        patrick.ryan@troutmansanders.com

                                        *Attorneys for Defendant Bank of China, New York Branch*